## LITTLE ROCK JUNCTION RY. v. BURKE.

(Circuit Court of Appeals, Eighth Circuit. January 28, 1895.)

### No. 403.

1. FEDERAL COURTS—JURISDICTION—SETTING ASIDE DECREE OF STATE COURT.
   The federal courts have no jurisdiction of a suit to set aside a decree of a state court, on the ground that such decree is utterly void when tested by an inspection of the record, since in such case a motion, appeal, or bill of review, in the court which made the decree, is the proper and sufficient remedy.

2. SAME.
   It seems that such courts may have jurisdiction of a suit to set aside such a decree on grounds outside the record, and proved by extrinsic evidence.

3. SAME—SUIT TO QUIET TITLE.
   Though the federal courts have jurisdiction, in a proper case, to entertain a bill to quiet title or remove a cloud on title, such jurisdiction does not extend to cases where the cloud consists of a judgment or decree of a state court, and proceedings taken in execution of the same, which judgment or decree is alleged to be void on its face.

**4. SAME.**

Suit was brought in a court of the state of Arkansas, pursuant to the statute of that state, by P. county, to establish and foreclose a tax lien on certain lands of B. The statute required an order to be made and published requiring claimants of lands affected by such a suit to appear and show cause why the same should not be sold, and provided that, upon proof. of publication and failure of claimants to appear, a decree pro confesso might be entered. Such a decree was made against B.'s lands, which were sold and conveyed to one S., who sold to the L. Ry. Co. B. subsequently brought a suit in the federal court to set aside such conveyances and the decree of the state court, as clouds on his title, upon the ground that the state court acquired no jurisdiction of B. It appeared by the record of the suit in the state court, which was the only evidence offered, that the affidavit of publication of notice filed in such record was not verified. *Held,* that the suit was one to set aside the decree of the state court for defects apparent on the face of the record, and that the federal court had no jurisdiction to entertain it.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

John Burke, the appellee, claiming to be the owner by inheritance of the south part of lot 6 in block 1 of Pope's addition to the city of Little Rock, Ark., filed a complaint against the Little Rock Junction Railway, hereafter termed the "Railway Company," to establish his title thereto, and to recover the premises from the possession of the defendant. The bill averred, in substance, that the railway company was in possession of the land under a conveyance from E. S. Stiewell; that said Stiewell claimed to have purchased the property at a sale for overdue taxes, which sale had been made in obedience to a decree of the Pulaski chancery court, a state court of Arkansas, having full chancery powers; that the title thus acquired by the railway company from E. S. Stiewell, its grantor, was unfounded and void, for the reason that said Pulaski chancery court never in fact acquired jurisdiction over the appellee in the suit to condemn and sell the property for overdue taxes. The tax suit in question was brought under the provisions of an act of the legislature of the state of Arkansas entitled "An act to enforce the payment of overdue taxes," approved on March 12, 1881, and an amendatory act approved March 22, 1881. Laws Ark. 1881, pp. 63–72, 159–161. The second, third, fourth, and fifth sections of said act, which are most material to the present case, are as follows:

"Sec. 2. On the filing of such complaint, the clerk of the court shall enter on the record an order, which may be in the following form: 'State of Arkansas, on Relation of ———, Plaintiff, vs. Certain Lands on which Taxes are Alleged to be Due, Defendant. Now, on this day came said plaintiff, and files here in court his complaint, in which he sets forth that there are certain taxes due on the following lands: [Here insert a description of the land.] Now, therefore, all persons having any right or interest in said lands, or any of them, are required to appear in this court within forty days from this date, then and there to show cause, if any they can, why a lien shall not be declared on said lands for unpaid taxes, and why said lands shall not be sold for non-payment thereof.'

"Sec. 3. The clerk of said court shall at once cause a copy of said order to be published for two insertions in some newspaper published in the county; and if there is no newspaper published in the county, he shall cause a copy of said order to be posted at the door of the court house of the county, or of the room in which the court is held; and such publication shall be taken to be notice to all the world of the contents of the complaint filed as aforesaid, and of the proceedings had under it.

"Sec. 4. That any person who can show that he has any interest in any of the lands mentioned in the said order, may appear in the court in which such complaint is filed, or before the clerk thereof in vacation, and file an answer, showing why the prayer of such complaint shall not be granted; * * * *

"Sec. 5. At the end of the forty days mentioned in section 2 of this act, the clerk shall enter upon the record a decree pro confesso, covering all lands

named in the complaint, regarding which no answer has been filed, which order may be in the following form: 'State of Arkansas, on the Relation of ——— Plaintiff, vs. Certain Lands on which Taxes are Alleged to be Due, Defendant. It appearing that the order herein made, requiring the owners of the lands in this suit to appear and show cause, if any they could, why a lien should not be declared on certain lands named in the complaint herein, has been duly published in the manner required by statute, and that no answer has been put in as to the following tracts or parcels of land, that is to say: [Here describe the lands.] It is now, therefore, ordered that the complaint be taken as true and confessed as to said lands above described.'"

Other provisions of said act authorized said court, if no cause to the contrary was shown, to fix a lien upon the lands for the amount of all the taxes, penalties, and costs ascertained to be due thereon, and to direct a judicial sale of the lands for the payment thereof if the sum ascertained to be due was not paid within 20 days from the date of the decree. The bill in the present case charged that the order made by the clerk in said proceeding on the filing of the complaint was not published, as required by the statute aforesaid; that there was no record in said cause showing that said order was ever published; that no proof of the publication of said order was made by the editor, proprietor, or chief accountant of any newspaper, or by any other person authorized to make such proof; that there was no record in said court showing that such proof was ever made; that said order was not in fact published as required by law; and that all of the proceedings of the Pulaski chancery court in said tax suit were coram non judice and void. The defendants denied all of the material allegations of the bill touching the jurisdiction of the chancery court, and averred that said court acquired full jurisdiction of the case and of all persons having any interest in the property. The defendants also pleaded, in substance, that the case made by the bill of complaint was not a case of which the federal circuit court sitting in equity could properly take cognizance. The circuit court rendered a decree in favor of the complainant, whereby it adjudged that his title was not divested by the sale under the aforesaid decree. It also decreed that he be restored to the possession of the property, and that he recover of the railway company the sum of $2,467 for the rents and profits of the land. To reverse said decree, the railway company has prosecuted an appeal to this court.

George E. Dodge and B. S. Johnson filed brief for appellant.

P. C. Dooley filed brief for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is manifest from an examination of the record in the case at bar that the circuit court found and decided that the decree of the Pulaski chancery court condemning the land in controversy to be sold for the nonpayment of taxes was utterly void for want of jurisdiction; and that issue as to the validity of the decree of the chancery court appears to have been tried and determined by the circuit court solely upon an inspection of the record in the tax suit. No evidence seems to have been offered for the purpose of impeaching the decree in question, except the record in the suit to foreclose the tax lien. For the purpose of showing that the Pulaski chancery court had acted without jurisdiction, and that its decree was a nullity, the complainant below, who is now the appellee, offered the following documentary evidence, to wit: The bill of complaint in the tax suit; the warning order that was entered therein on the filing of the bill pursuant to section 2 of the act of March 12, 1881, supra; the decree pro confesso that was entered in said proceed-

ing; the final decree therein; and a paper produced by the clerk of the chancery court, that purported to be the proof of publication of the warning order, which paper was in the following form, to wit:

"Notice of Delinquent Lands.

"In the Pulaski Chancery Court, at the March Term Thereof, A. D. 1881.

"Pulaski County, Plaintiff, vs. Certain Lands upon which Taxes are Alleged to be Due.

"Comes the plaintiff, the county of Pulaski, by P. C. Dooley, Esq., its solicitor, and files here in court its complaint, which sets forth that there are certain taxes due on the following lands, to wit: * * * ; S. pt. being ¼ lot 6, block one, Pope's addition. Now, therefore, all persons having any right or interest in said lands or city lots, or any of them, are required to appear in this court within forty days from this date, then and there to show cause, if any they can, why a lien shall not be declared on said lands for unpaid taxes, and why said lands shall not be sold for nonpayment thereof.

"A true copy from the record. J. W. Callaway, Clerk.

"June 11, 1881.

"State of Arkansas, County of Pulaski—ss.: I, J. O. Blakeney, do solemnly swear that I am principal accountant of the Arkansas Democrat, a daily newspaper printed in said county, and that I was such principal accountant at the dates of publication hereinafter stated, and that said newspaper had a bona fide circulation in such county at said dates and had been regularly published in said county for the period of one month next before the date of the first publication of the advertisement hereto annexed, and that the said advertisement was published in said newspaper two times, for two days consecutively, the first insertion therein having been made on the 13th day of June, 1881, and the last on the 14th day of June, 1881.

"J. O. Blakeney, Princ. Acc't.

"Sworn to and subscribed before me, this ——— day of ———, 188–.

"———————, Notary Public.

* * * * * * * * * * * * * * *

"In testimony that the above and foregoing writing is a true copy of the matter therein recited, as appears from the original paper purporting to be proof of publication in the case mentioned in the caption, and which paper is now in my custody, I have hereto set my hand, and affixed the seal of said court, at my office in the city of Little Rock, this 16th day of February, 1893.

"[Seal.] I. J. Hicks, Clerk."

In addition to the documentary proof aforesaid, no extrinsic evidence was produced by the complainant which tended to show that the warning order was not in fact published or posted as section 3 of the act of March 12, 1881, required, but the case was submitted to the circuit court for decision, on the evident assumption that the defect in the proof of publication was such as to demonstrate the utter invalidity of the decree of the chancery court. It is a proposition which admits of no controversy that the Pulaski chancery court acquired no jurisdiction to condemn the land in question to be sold for taxes, and that its decree in that behalf was of no effect, and conveyed no title to the purchaser thereunder, if the warning order was not in fact published in the mode prescribed by the statute. It was held in Gregory v. Bartlett, 55 Ark. 33, 17 S. W. 344, that a lawful publication of the warning order prescribed by the act of March 12, 1881, supra, is necessary to confer jurisdiction in a suit under that act to enforce a lien for overdue taxes, and that a publication of the order in the mode prescribed by law is unavailing to confer jurisdiction if the clerk of the court neglects

to enter the warning order of record before the same is published. The doctrine of that case has recently been cited and approved by the supreme court of the United States in Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124. These decisions, however, do not decide the proposition, which appears to have been maintained in the circuit court, that the decree of the Pulaski chancery court in the tax suit is void upon the face of the record. In that suit the record discloses that the warning order was duly entered; the decree pro confesso recites that the warning order had "been duly published in the manner required by statute more than forty days before this date"; and the final decree contains the same recital, in substance, and a further finding by the court "that proof of publication, of which notice, verified and proved as required by law, was filed as required by law." No other portion of the record showed affirmatively, or by necessary intendment, that the recital as to the due publication of the warning order was in fact false. For aught that appears on the face of the record in the tax suit, the warning order may have been published precisely as the statute requires, and proof of that fact may have been made to the satisfaction of the chancery court. The contention of the complainant in the circuit court seems to have been that the decree of the chancery court was void upon the face of the record, and assailable in any collateral proceeding, because the proof of publication aforesaid, which was on file in the case, was not verified, and because a general statute of the state of Arkansas declares that "the affidavit of any editor, publisher or proprietor, or the principal accountant of any newspaper, authorized by this act to publish legal advertisements, to the effect that a legal advertisement has been published in his paper for the length of time and number of insertions it has been published, with a printed copy of such advertisement appended thereto, subscribed before any officer of this state authorized to administer oaths, shall be the evidence of the publication thereof as therein set forth." Mansf. Dig. § 4359. In other words, it seems to have been claimed and decided that a decree rendered in a suit founded on the act of March 12, 1881, supra, is utterly void, if the record does not contain the statutory evidence of publication above indicated, and that decrees rendered in such suits are not entitled to the benefit of any of those presumptions which ordinarily attend and support the judgments of courts of superior jurisdiction when the record does not affirmatively show that no jurisdiction was in fact acquired.

We have been thus particular in describing the character of the testimony that was offered and the nature of the issue that appears to have been tried and determined in the circuit court, for the purpose of showing that the trial of the case clearly resolved itself into a review of the proceedings of the Pulaski chancery court for matters apparent on the face of the record. It is manifest that the evidence offered to impeach the decree in the suit to foreclose the tax lien was such testimony as would have been admissible to support a bill of review, or a motion in the nature of a bill of review, to vacate the decree, had the complainant seen fit to commence a

proceeding of that kind in the Pulaski chancery court. It is also obvious, we think, that if the decree of the chancery court is in fact void on the ground that was and is relied upon to establish its invalidity,—that is to say, for want of jurisdiction apparent on the face of the record,—then the complainant could have obtained as full relief by a bill of review filed in the chancery court as by an original bill filed in the federal circuit court. In addition to the consideration that a bill of review would have furnished an adequate remedy, it must be also borne in mind that the remedy by appeal was originally open to the complainant if he had seen fit to prosecute an appeal. Moreover, it is a general rule that, unless restrained by the terms of an express statute, a court of superior jurisdiction has power at any time to vacate its own judgments when it appears from an inspection of its record that a particular judgment or decree is utterly void for want of jurisdiction either over the person or the subject-matter. This is an inherent power, which all courts of superior jurisdiction possess as a necessary part of the machinery for administering justice, and as a means of preventing their orders and decrees from becoming instruments of injustice. Black, Judgm. §§ 297, 307, and cases there cited.

Inasmuch, then, as the case at bar was essentially a suit to annul the decree of the Pulaski chancery court and the proceedings that had been taken thereunder, for the alleged reason that the decree was utterly void when tested by an inspection of the record, it becomes important and necessary to inquire whether the circuit court could properly entertain jurisdiction of a suit of that nature. It may be admitted that the federal circuit courts have power to entertain suits to enjoin persons from asserting any right or title under a judgment or decree of a state court of co-ordinate jurisdiction that is alleged to have been obtained by fraud or collusion. Gaines v. Fuentes, 92 U. S. 10; U. S. v. Norsch, 42 Fed. 417. Possibly, a bill in equity to obtain the same relief may be entertained in any case where it is shown by proper averments that the judgment of a state court which is apparently regular and valid, and for that reason is not subject to collateral attack, for some reason not disclosed by the record is in fact invalid and of no effect. A complaint alleging such facts would furnish a proper foundation for an original suit in equity because additional issues would be raised and new facts would be brought upon the record as the basis for independent judicial action. But a complaint or a petition which seeks to impeach a decree, without the aid of extrinsic evidence, for want of jurisdiction apparent upon the face of the record, simply imposes upon the court to which it is addressed the duty of re-examining questions that have once been tried and decided, and for that reason a proceeding of that nature cannot be regarded as a new action, but is rather a continuation of the original suit. The case of Barrow v. Hunton, 99 U. S. 80, 82, furnishes an apt illustration of the distinction which exists between a suit to impeach a judgment which is apparently valid, by evidence dehors the record, and a proceeding to vacate a judgment for matters disclosed upon the face of the record. In that case, Hunton had obtained a final

judgment by default in a state court of Louisiana in an attachment suit.    Subsequently, the judgment debtor filed a complaint against Hunton in the state court to nullify the judgment, on the ground that he had not been lawfully served with process.    Hunton caused the proceeding to nullify the judgment to be removed to the circuit court of the United States, where the question arose whether the federal court could lawfully entertain jurisdiction of the proceeding.    With reference to that question, Mr. Justice Bradley, in delivering the opinion of the supreme court of the United States, said:

"The question presented with regard to the jurisdiction of the circuit court is whether the proceeding to procure [the] nullity of the former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and substantially a continuation of it.   If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case.   Otherwise, the circuit courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states.   Such a result would be totally inadmissible.   On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding; and according to the doctrine laid down in Gaines v. Fuentes, 92 U. S. 10, the case might be within the cognizance of the federal courts.   The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

In that case it was held that as the proceeding in question merely involved a review of the action of the state court, as disclosed by its record, the state court was the proper tribunal to dispose of the proceeding, and that it could not be entertained by the federal court.    In some other cases it has been ruled that, as between state courts of co-ordinate jurisdiction, one of such courts has no power to annul and enjoin the judgments or decrees of another. Plunkett v. Black, 117 Ind. 14, 19 N. E. 537; Grattan v. Matteson, 51 Iowa, 622, 2 N. W. 432.

We think, therefore, that it may be accepted as a general rule, in the absence of any statutory provisions on the subject, that the proper forum in which to seek relief, otherwise than by an appeal or writ of error, against a judgment or decree which is alleged to be void on the face of the record, is in the court by which such judgment or decree was rendered, and that other courts of co-ordinate jurisdiction have no authority to grant relief in such cases.    But, whatever may be the correct rule in this respect as between state courts of equal authority, it is manifestly true, we think, that, owing to the peculiar relations which exist between state and federal courts of co-ordinate jurisdiction, the federal circuit court ought not to review, modify, or annul a judgment or decree of a state court, unless such review is sought on a state of facts not disclosed by the

record of the state court, which, for that reason, has not undergone judicial examination. The sufficiency of the service, whether by publication or otherwise, to support a final adjudication, and every other matter apparent upon the face of the record, are supposed to have received due consideration by the court rendering a judgment or decree before the same was entered. Therefore, when a suit is instituted to nullify a decree for matters disclosed by the record, and for no other reason, the proceeding is not a new suit, but is essentially in the nature either of an appeal from the original adjudication or a bill of review. The federal courts should remit proceedings such as these to the judicial tribunal of the state which made the record that is to be reviewed or impeached.

We have not overlooked the fact that in the case at bar the bill prays that the complainant's title may be quieted against the claims of the Little Rock Junction Railway, and that he may be restored to the possession of the premises now wrongfully withheld from him by the defendant. Neither has it escaped our observation that the complaint was filed after the alleged void decree of the chancery court was fully executed, and after the defendant had acquired a title thereunder. It might be argued with some force that the circumstance last mentioned was of sufficient weight to authorize the circuit court to review the proceedings of the chancery court, and to afford relief, if it appeared that the complainant was without means of redress for the alleged wrong in the state court by which the supposed void decree was rendered. But such was not the fact. As we have heretofore sufficiently shown, the remedy by a bill of review or by an appeal was at one time open to the complainant, and no reason is perceived why the relief obtainable by a bill of review would not have been as effectual as the decree rendered by the circuit court. Moreover, as the present action was brought and prosecuted upon the theory that the decree of the chancery court is utterly void when tried by the record, it follows that the remedy by ejectment was also open to the complainant, for no doctrine is better established than that a sale under a decree that was rendered without jurisdiction confers no title, and that such a decree is open to impeachment in any collateral proceeding when the want of jurisdiction is apparent upon the face of the record. Galpin v. Page, 18 Wall. 350; Coit v. Haven, 30 Conn. 190; Adams v. Cowles, 95 Mo. 501, 8 S. W. 711; Frankel v. Satterfield (Del. Super.) 19 Atl. 898; Furgeson v. Jones (Or.) 20 Pac. 842; Black, Judgm. §§ 278, 407, and cases there cited.

Forasmuch, then, as the injury complained of was subject to redress in the modes above indicated, we are constrained to hold that the federal court ought not to have intervened, as it did, notwithstanding the fact that the decree complained of had already been executed. The federal circuit courts sitting in equity have an undoubted right, in certain cases, to entertain a bill to quiet title or to remove a cloud upon a title, for this has been from time immemorial one of the well-known functions of a court of equity where the remedy at law is inadequate, either because the complainant is in possession, or because his title is of an equitable

nature, or because the land the title whereof is affected is vacant and unoccupied. This court has several times recognized the jurisdiction in question, and attempted to define its limits. Bigelow v. Chatterton, 10 U. S. App. 267, 2 C. C. A. 402, and 51 Fed. 614; Sanders v. Devereux, 8 C. C. A. 629, 633, 60 Fed. 311; Frey v. Willoughby, 11 C. C. A. 463, 63 Fed. 865. But we think that this jurisdiction does not extend, and ought not to be extended, to cases where the cloud upon a title consists of a judgment or decree of a state court, and proceedings that have been taken in execution of the same, which are alleged to be utterly void, and on that account require the introduction of no evidence to establish their invalidity other than the record of the state court. Because the federal courts have power to entertain a bill to quiet title, it does not follow that, under the guise of administering such relief, they will review the proceedings of a state court, and vacate the judgment of a state court which is obviously void when tested by the record, or that they will undo what may have been done by virtue of proceedings taken under such a judgment, so long as it is possible for the complainants to have such judgment and the proceedings taken thereunder vacated by a proper application addressed to the state court. For these reasons, our conclusion is that the facts proven at the trial were not of such a character as are essential to support an original bill in the federal courts.

The decree of the circuit court is therefore reversed, and the cause is remanded, with directions to the circuit court to vacate its decree and to dismiss the bill of complaint, without prejudice to the appellee's right to take such action in the state court as he may deem proper.

SANBORN, Circuit Judge (concurring). I concur in the result in this case on the following grounds: A bill in equity cannot be maintained in the national courts to recover possession of real property in cases in which there is no impediment to an action of ejectment. Sanders v. Devereux, supra. The only evidence produced by the appellee in this case to impeach the tax judgment on which the appellant's title rested was that which appeared on the face of the files and records of the Pulaski county chancery court, and the only contention on which he relied to overthrow that judgment was that these files and records disclosed the fact that that court never had jurisdiction to render the judgment. If this position was sound, the appellee could have maintained ejectment to recover the property in question, inasmuch as the appellant was in possession, and for that reason the bill should have been dismissed. If, on the other hand, the files and records of the Pulaski county chancery court did not disclose its want of jurisdiction, and hence the invalidity of the tax judgment, then there was no evidence in the court below to sustain the claim of its invalidity, and the bill should have been dismissed for that reason.