HALE v. BUGG et al.

(Circuit Court, W. D. Arkansas. March 31. 1897.)

1. FEDERAL COURTS—ENJOINING SUIT IN STATE COURT—CONCURRENT JURISDICTION.

A circuit court of the United States will not, at the instance of a receiver appointed by a state court in another state, enjoin creditors who have attached property in a state court in this state from prosecuting their suit in the state court; nor will it make any order requiring the sheriff to deliver property in his custody under attachment proceedings to the receiver of the circuit court. The general rule is that, where there are two or more tribunals competent to issue process to bind the goods of a party, the goods shall be considered as effectually bound by the authority of the process under which they were first seized, and the court which first obtains possession of the res must be allowed to dispose of it without interference or interruption from a co-ordinate court. Under the state of facts above set out, a circuit court of the United States will not look into the pleadings in the state court to see whether any cause of action is stated, for the reason that the pleadings, if defective, may be amended; and, if the facts are such as not to admit of an amendment, the state court is the proper tribunal to determine that question.

2. SAME—REMEDY FOR WRONGFUL ATTACHMENT BY STATE COURT.

If a party, where property has been attached wrongfully in a state court, desires to pursue it in a circuit court of the United States, his remedy is trespass, not replevin, and not by proceedings for an injunction or receiver. The rights of domiciliary and ancillary receivers of the assets of insolvent mutual benefit associations, and the rights of creditors, casually discussed, but not decided. Marshall v. Holmes, 12 Sup. Ct. 62, 141 U. S. 589, does not contravene any principle decided in this case.

Suit in equity by William D. Hale, as receiver of the American Savings & Loan Association, against T. W. Bugg and others. Heard on the pleadings and stipulation of facts.

Eugene G. Hay and Jos. M. Hill, for plaintiff.

T. W. M. Boone, for defendants.

ROGERS, District Judge. The facts necessary to a correct determination of this cause are as follows: J. W. Hood, Antone Maree, George H. Lyman, and several other creditors, all citizens of Arkansas, on the 21st of February, 1896, filed a creditors' bill in the Sebastian circuit court for the Ft. Smith district against the American Savings & Loan Association of Minneapolis, Minn., and, having made the necessary affidavits, caused an attachment to be issued and levied upon a body of land belonging to said association, situate in the Ft. Smith district of Sebastian county, Ark., and which, for convenience, is called the "Tilley Tract." While said Tilley tract was in the custody of the sheriff the defendant association appeared in the state court, and removed the case into this court. Upon its being docketed here a motion was filed to remand the same, which was accordingly done; and that case is now pending in the Sebastian circuit court for the Ft. Smith district, its status being the same as when it was originally removed into this court. Subsequently, on the 19th of November, 1896, the bill in this case was filed in this court by William D. Hale, as receiver of the American Savings & Loan Association, against all the plaintiffs in the suit in the state court, the agents for the Arkansas land, and the sheriff of Sebastian county, who holds the

Tilley tract under attachment from the state court, as defendants, and alleges that he was appointed such receiver on the 14th of January, 1896, by the district court of the Fourth judicial district of the state of Minnesota, at the relation of the attorney general of that state, said association being a corporation created and existing under and by authority of the laws of that state, and that subsequently, on the 18th of June, 1896, the appointment of said Hale as receiver was made permanent, and said receiver invested by the decree of said court with all the lands, tenements, hereditaments, choses in action, and assets of every kind, wherever situate, and the officers of said company decreed to convey, and did convey, to said Hale on the 27th of June, 1896, among other things, the said Tilley tract of land, and also other lands described in the complaint, situate in the Western district of Arkansas.   It alleges that under the orders and decrees of said court it is the duty of the said receiver to reduce to possession all the assets of every description belonging to said association, and from the money so derived to pay the creditors of said corporation, and disburse the residue under the orders of that court; that on the 7th of November, 1896, the said district court for the state of Minnesota directed said receiver to file a bill in this court to the end that the real estate situate in the Western district of Arkansas might be reduced to his possession through the appointment of a receiver. It is alleged that the said William D. Hale is a citizen and resident of the state of Minnesota, and that all of the defendants to this bill are residents, citizens, and inhabitants of the Western district of Arkansas, and that all the tracts of land in controversy exceed in value the sum of $2,000.   It is also alleged that the plaintiffs in the suit in the Sebastian circuit court for the Ft. Smith district are stockholders in said defendant association, and that there are no creditors of such association in said state except such stockholders, and that no citizen of Arkansas has any prior right or rights in the Arkansas lands; that said association was a duly-created building or savings and loan association of the state of Minnesota, its business being to assist its members in saving and investing money, and in buying and improving real estate, and in procuring money for other purposes, by loaning or advancing, under the mutual building society plan, to such of them as may desire to anticipate the ultimate value of their shares, from funds accumulated from the monthly contributions of its stockholders, and also such other funds as might from time to time come into its hands; that the Arkansas stockholders paid their stock in monthly subscriptions, in accordance with the methods of business adopted by the company; that said association owns real estate in 19 states, and has mortgages in 29 others, and that all the stockholders in each of said states were jointly interested with the Arkansas stockholders in the rights, privileges, immunities, and liabilities of said association; that the association is insolvent, and has been so declared by the said district court of Minnesota, at the relation of the attorney general of said state, and that the rights and liabilities of each and every stockholder in said corporation were to be determined and adjudicated under the laws of the state of Minnesota; that the said creditors' bill filed in the Arkansas state court is based

upon subscriptions of stock which the said plaintiffs therein had paid, and that said suit in the said state court is an attempt upon the part of the plaintiffs in said suit in said state to secure an unlawful preference over other stockholders in said association, and over creditors of said corporation, and is unauthorized by law and against equity and good conscience; that said receiver is not a party to said suit in said state court, although it was filed after he had been appointed and was invested with all of the assets of said corporation, and after said corporation was adjudged insolvent and restrained from further controlling or managing its assets. It does not appear from the bill that said corporation has ever been dissolved. Folger v. Insurance Co., 99 Mass. 267; Hubbard v. Bank, 7 Metc. (Mass.) 346; Taylor v. Insurance Co., 14 Allen, 353. On the contrary, it appears that said corporation appeared in the Arkansas state court, and caused said suit to be removed to this court, which suit, as before stated, has been remanded to the state court. The prayer of the bill is for the appointment of an ancillary receiver to take possession of all the property of said association in Arkansas, and to sell the same under proper orders of the court, and bring the proceeds into said court, to be turned over to the complainant, to be administered under the orders of the district court of the state of Minnesota, or, in the event the judges of this court determine otherwise, then to be administered under proper orders of this court, and the surplus, if any, to be turned over to the complainant, to be administered under the laws of the state of Minnesota; (2) that the sheriff of Sebastian county, and George H. Lyman, the agent of said association, and defendants Clark & Clock, agents of other property situated at Eureka Springs, Ark., be required to deliver to the receiver so appointed the real estate under their control; (3) that the Arkansas defendant stockholders, who are plaintiffs in the suit in the Arkansas state court, be enjoined and restrained from pursuing their action at law in this court, or in the Sebastian circuit court for the Ft. Smith district, or any other court, and be required to dismiss their attachment of said real estate in said Arkansas state court. The bill also prays for general relief. All of the defendants except Clark & Clock appear and file answer, but the answer does not contravene any matters of fact hereinbefore stated. The replication was duly filed, and the cause submitted to the court upon bill and exhibits, answer and replication, and the written stipulation that the allegations of fact contained in the pleadings are true, and that they state all the facts of the case.

The court is of opinion that the bill is sufficient to authorize the appointment of an ancillary receiver to take charge of all the property in the state upon which no prior lien by citizens of this state has been acquired. The real question in the case is "whether or not this court can render any decree which in any wise affects the sheriff's possession of the Tilley tract, duly levied upon under attachment, issued from the state court at the instance of the plaintiffs in that suit, who are defendants in this." In the determination of this question, it is not necessary to decide, and I do not decide, whether or not the plaintiffs in the state circuit court have stated any cause of action, or whether, under the admitted facts in this case, any cause

of action can be stated which would entitle them to recover against the defendant corporation, or the receiver appointed in this case, should he conclude to make himself a party to that suit, contesting the title and right of possession to the Tilley tract, for the reason that, if the cause of action in that case is defectively stated, it can be amended, and, if the facts do not admit of its being so amended as to make a good cause of action, that question can be determined by that court, which has jurisdiction of the parties and the subject-matter. If it be said that this view of the case deprives the plaintiff, who is a citizen of Minnesota, of his right, guarantied under the laws of the United States, to have his case tried in the federal court, the answer is that, had the receiver, in apt time, and before the defendants instituted their suit in the state court, applied here for the appointment of an ancillary receiver to take charge of the assets of the said association in this state, it would have been granted, and the federal court would then have adjudicated and settled all the questions involved; or, if the receiver had appeared in apt time and made himself a party to the proceedings in the state court for the purpose only of testing his title and right to the possession of the Tilley tract, the court is inclined to the opinion that, the property being worth more than $2,000, he would have had the right to remove the case into the federal court for trial. Hoover & Allen Co. v. Columbia Straw-Paper Co., 68 Fed. 945; Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co., 43 Fed. 545. But, if the court is in error in this regard, then it must be held that, when the association engaged in business in this state, it elected, under the conditions above stated, to submit such matters to the jurisdiction of the state court. We confine ourselves, therefore, to the simple questions stated.

Mr. Beach, in his work on Receivers (paragraph 20), after discussing the comity between courts of different states, and courts of co-ordinate jurisdiction in the same state, says:

"The same principle of comity which has already been noticed as actuating the settlement of similar questions between courts of different states has been invoked for their determination, until the rule is now well settled by the practice of the courts, under both systems, that the court which first acquires jurisdiction of the res or subject-matter will retain such jurisdiction until the final disposition of the case. While this rule is subject to limitations, it is well settled that while the property is in the possession of a court, either actually or constructively, that court is bound to protect its possession from the process of other courts. Buck v. Colbath, 3 Wall. 334; Andrews v. Smith. 19 Blatchf. 100, 5 Fed. 833."

The supreme court of the United States, in Riggs v. Johnson Co., 6 Wall. 196, says:

"Based on that consideration, the settled rule is that the remedy of a party whose property is wrongfully attached under process issued from a circuit court, if he wishes to pursue it in a state tribunal, is trespass, and not replevin, as the sheriff cannot take property out of the possession and custody of the marshal. Freeman v. Howe. 24 How. 455. * * * Undoubtedly circuit courts and state courts, in certain controversies between citizens of different states, are courts of concurrent and co-ordinate jurisdiction; and the general rule is that, as between courts of concurrent jurisdiction, the court that first obtains possession of the controversy, or of the property in dispute, must be allowed to dispose of it without interference or interruption from the co-ordinate court. Such questions usually arise in respect to property attached on mesne process, or property seized upon execution; and the general rule is that, where there are two or more tribunals

competent to issue process to bind the goods of·a party, the goods shall be considered as effectually bound by the authority of the process under which they were first attached or seized. Corresponding decisions have been made in this court, as in the case of Hagan v. Lucas, 10 Pet. 400, where it was held that the marshal could not seize property previously attached by the sheriff and held by him or his agent under valid process from a state court. Taylor v. Carryl, 20 How. 595; Mallett v. Dexter, 1 Curt. 174, Fed. Cas. No. 8.988."

In Christmas v. Russell, 14 Wall. 69, the court say:

"That judgment [Freeman v. Howe, 24 How. 450] was reversed by this court upon the ground that the circuit court, having first acquired possession of the res, could not be deprived of that possession until the litigation there was brought to a close."

See, also, New Orleans v. Steamship Co., 20 Wall. 393.

Authorities on this precise point might be multiplied almost indefinitely, but the general rule is so well established as not to require further citation.

Baldwin v. Hosmer (Mich.) 59 N. W. 432, is the case of a mutual benefit association like the American Savings & Loan Association, of which the plaintiff in this case is receiver. Its title was the "Order of the Iron Hall," and it was a corporation organized under the laws of Indiana, where its supreme lodge was located. It had nearly 1,200 local or sisterhood branches in different states, and 9 in Canada, with a total membership of 60,000 persons. It became insolvent, and a receiver was appointed at Indianapolis, and also an ancillary receiver in Michigan, where it had a sisterhood or local branch, which local branch had funds in its possession. James F. Failey was appointed receiver at Indianapolis, Ind., where the main lodge was located, of all the property of every kind of the Iron Hall, both within and without the state of Indiana, with full powers, such as receivers ordinarily exercise. The other facts are very similar to those stated in this case. The receiver appointed in Michigan sought to compel the local order to turn over the funds in its hands to him as receiver. The local order declined. Thereupon the Michigan receiver filed a petition in the court which appointed him, praying the court for an order to compel the local order to show cause why they should not be punished for contempt in not turning over the funds. The petition was refused, and thereupon the receiver filed a petition in the supreme court of Michigan for a mandamus to compel the circuit judge to compel the local order, by proceedings for contempt, to turn over the funds. The mandamus was refused. The supreme court of Michigan went into an elaborate discussion of the entire case. I quote from the synopsis:

"(1) Where the rules of a mutual benefit order provide that the reserve fund of its local branches in other states shall be controlled by and belong to the supreme lodge, the title to such fund is in the supreme lodge, and must be so distributed that each member shall derive benefit from the entire corpus of the assets of the supreme lodge, without regard to its local habitation. (2) Where such order becomes insolvent, and a domiciliary and an ancillary receiver are appointed therefor, the local branches cannot refuse, without good cause shown, to turn over the assets to the ancillary receiver, and when he has possession thereof the court may order them transmitted to the domiciliary receiver."

In this case the local order had been garnished prior to any of the steps taken to compel it by proceedings in contempt to turn over the

money, and they set up that garnishment in their answer. On that point the court said:

"By the answer of the local branch and its officers, it appears that the fund has been garnished in their hands, and that such proceedings are still pending and undetermined. Certainly the court would not make an order for the payment of this fund into the hands of the receiver until the questions arising under the garnishment proceedings are determined. The plaintiffs in these cases have a right to their day in court before they can be deprived of the fund, or before the local branch and its officers are bound to pay it over to the receiver. The plaintiffs in the garnishment proceedings are not parties here, and their rights cannot be here litigated. If they have obtained a valid lien on the fund, that lien is not dissolved by the filing of a bill, and the appointment of a receiver, but may be enforced. Hubbard v. Bank, 7 Metc. (Mass.) 340; Taylor v. Insurance Co., 14 Allen, 353; Folger v. Insurance Co., 99 Mass. 267."

It does not appear in that case that the persons who had garnished the local lodge were stockholders; they were presumably creditors, and not stockholders; and in that respect it differs from this case. But I am of the opinion that the difference is entirely immaterial, and that the principle involved is the same. The mandamus in that case was refused. The court further say:

"The court below offered to permit the receiver to bring suit for these assets, which offer was declined. We think the court, under the facts stated in the answer of the local branch and its officers, properly refused to adjudge the parties guilty of contempt. We may remark, however, that, if the assets are finally paid into the hands of the receiver, it will be the duty of the court to direct that upon their payment over to the Indiana receiver the Michigan claimants shall receive a proportionate dividend with creditors elsewhere."

In Hunt v. Insurance Co., 55 Me. 290, the supreme court of that state said:

"The judgment of another state decreeing a dissolution, and appointing receivers to wind up the concerns of a corporation created by its laws, will not permit an action commenced against such corporation here prior to such dissolution from proceeding to judgment, unless it be shown that the corporation is utterly extinct. It is not sufficient to show that, by the law and usage in the courts of the state where such decree of dissolution is passed, such corporation is permanently dissolved, although it still has a qualified existence, capable of being a party to a judgment there. The local authority of receivers duly appointed in another state is co-extensive with the jurisdiction of the court by which they were appointed, and comity does not require the courts of this state to permit receivers appointed by the courts of another state to exercise privileges detrimental to our own citizens while pursuing appropriate legal remedies here."

The principles laid down in the Maine decision seem to be well settled, not only by the decisions of the states, but also of the federal courts. Beach, Rec. § 19, and cases there cited.

Counsel for the plaintiffs cite Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, as authority for the issuance of an injunction in this case against all the defendants. A careful examination of that case will show an entire absence of analogy between the two cases. In that case David Meyer recovered a number of judgments against Mrs. Marshall in the Eighth district court for the parish of Madison, La. Each of the several judgments was less in amount than $500, but the aggregate of all the judgments amounted to over $3,000. After these judgments were recovered, Mrs. Marshall filed a bill in equity in the same court against David Meyer and the sheriff of that parish to vacate all of the judgments for fraud, and to prevent the execution

thereof by the sheriff. Meyer appeared, and filed exceptions and pleadings of estoppel and res adjudicata. Mrs. Marshall then filed a petition, in apt time and form, to remove the case into the circuit court of the United States. The application for removal was denied. The case was heard upon its merits in the state court of Louisiana, and judgment entered dismissing the bill for want of equity. The case was appealed to the state court of appeals in Louisiana, and there affirmed. From that judgment Mrs. Marshall prosecuted a writ of error to the supreme court of the United States. The bare statement of facts shows the want of analogy between that case and the one at bar. In that case Mrs. Marshall filed her original bill in the same state court of Louisiana in which the judgments were rendered, and then undertook to remove it into the United States circuit court. In this case the proceedings by the defendants originated in the state court, as in that case, but the bill in this case was filed in the United States (not the state) court. It does not appear from the opinion whether, in that case, the sheriff had levied the execution or not. In this case it affirmatively appears that the property is in custodia legis. It would, however, make no difference in that case as to whether the property was in the custody of the law or not, because the application was to remove the whole case, together with the custody of the property, into the federal court, and when there, if properly there, that court could administer equity just as if the case had been tried in the court where it originated. It was not an effort at all upon the part of Mrs. Marshall to interfere through the United States court with the proceedings in the state court. It was an effort upon her part to impeach the judgment for fraud in the same court where the judgments were rendered, and afterwards she sought to remove it into the federal court to be heard. The supreme court held, of course, that that was a proper proceeding, provided the federal court had jurisdiction; and it also held, for the purposes of that bill, that more than $500 was involved, and that the federal court had jurisdiction, and therefore reversed the court of appeals in Louisiana, and remanded the cause, requiring the Louisiana courts to conform to that opinion and send the whole case into the federal court to be tried. Counsel have not been able to cite any case which authorizes a federal court to interfere by injunction or by receiver, or by its marshal, with property in the custody of the law in a state court of co-ordinate jurisdiction, and I have been unable to find any modern decision of any state or federal court recognizing that doctrine.

If it be said that the facts stated in the bill constitute a cause for equitable cognizance, and that the court can see that the plaintiffs in the state court, who are stockholders, are not entitled to prosecute suits at law to judgment against the company for the amount of premiums they have paid in, and that, therefore, an injunction should be granted staying the suit, and also an injunction compelling the sheriff to surrender the property to the receiver, the answer is that the state court, having first acquired jurisdiction of that question, must be left to determine it. But suppose the court should make such an order. The property in the custody of the sheriff would remain in the custody of the sheriff perpetually, unless the complainant in this

bill should apply to that court to have the property released; and, if such application were made, the plaintiffs in that suit and the sheriff would be enjoined from resisting the same, and we should have the spectacle presented of the receiver of this court applying to that court for relief as against the plaintiffs and the sheriff in that suit, while they were enjoined from prosecuting the suit or defending the application by the order of this court. It is just this condition of things upon which the doctrine of comity hereinbefore stated rests. Moreover, under the decisions heretofore cited, if the receiver should undertake to take possession of the property in the custody of the sheriff the sheriff would have the right to resist the same, and that court, perhaps, the power to punish the receiver of this court for contempt, and thus would be brought about such conflict of authority as the law would avoid. It may be said that the court has the power to not only enjoin the defendants from prosecuting their suit in the state court, but also to compel them to dismiss the same, in which event the property in the hands of the sheriff would be released, and the receiver could then take possession thereof. Authorities have been cited to enforce that doctrine, but all the cases upon that point rest upon the theory that some fraud or unjust advantage has been taken, whereby the rights of the complainant have been prejudiced; but in this case, while the allegations in the bill allege that the plaintiffs in the state court are seeking to secure an unjust advantage, it is manifest that the question can be decided in the state court just as well as in this court, and the defendant association can now set up all of its defenses, whether they be at law or in equity, and the receiver may also appear and set up his rights with reference to the property, and have the same adjudicated in that court. There is therefore no fraud in this case, nor is there any reason why the rights of the parties in that court cannot be adjudicated as fairly and justly there as if they were here. We think, therefore, on that point, that the facts stated in the bill do not constitute a separate and distinct ground of equity jurisdiction. Railway Co. v. Burke, 27 U. S. App. 736, 13 C. C. A. 341, and 66 Fed. 83.

A decree will go appointing a receiver for all property belonging to the American Savings & Loan Association, of every description and character, real, personal, and mixed, including debts, choses in action rents, and the like, which are not in custody of any state officer under legal process; and authority will be given to such receiver, if he elect so to do, to take proper steps in the state court to reduce to his possession the Tilley tract referred to in this complaint; and the court retains the case for the purpose of making any further orders that may be necessary for the proper disposition of the assets of said association.