UNITED STATES v. ANDERSEN.

(District Court, D. Idaho, C. D.   April 1, 1909.)

No. 20.

1. COURTS (§ 424*) — FEDERAL COURTS — JURISDICTION—PROCEEDINGS OF STATE COURT—REVIEW.

Where, in proceedings for the naturalization of an alien in a state court, that court deliberately reached a conclusion favorable to its jurisdiction and adverse to the government's contention, and no steps were taken for a review by the Supreme Court of the state, which alone could give an authoritative construction of the local law on which the jurisdiction depended, a federal District Court would not take jurisdiction of an application by the government to set aside the certificate of naturalization granted in the state court proceedings, having only concurrent and not revisory jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 424.*]

2. COURTS (§ 366*)—CONCURRENT JURISDICTION—COMITY.

Since the construction of state laws is primarily within the authority of the state courts, a court of the state having held that it had jurisdiction under a state statute of a naturalization petition, and having granted a certificate of citizenship, a federal District Court of concurrent jurisdiction, in a proceeding by the government to cancel the certificate for alleged want of jurisdiction of the state court on considerations of comity, would reach a conclusion as to the construction of the state law in conformity with that of the state court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 366.*]

3. ALIENS (§ 69*)—NATURALIZATION—CERTIFICATES—PROCEEDINGS TO CANCEL—DUTY TO PROSECUTE.

Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1907, p. 427), makes it the duty of the United States district at-

torney, and not of the Bureau of Immigration and Naturalization, or its representatives, to prosecute proceedings for the cancellation of certificates of naturalization.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 69.*]

On Demurrer to Petition by the United States to Cancel a Naturalization Certificate.

C. H. Lingenfelter and Andrew J. Balliet, for the United States.

Jens Peder Andersen, in Pro. Per.

DIETRICH, District Judge. At some date prior to June 9, 1908, the respondent, Jens Peder Andersen, filed in the district court of the Third judicial district of Idaho, in and for Ada county, his petition for naturalization, praying that he be admitted as a citizen of the United States, and, after hearing, his petition was, on the 9th day of June, 1908, granted, and a certificate of citizenship issued to him. The United States now brings this proceeding, under section 15, Naturalization Act June 29, 1906 (chapter 3592, 34 Stat. 601 [U. S. Comp. St. Supp. 1907, p. 427]), to cancel the certificate, upon the ground that, the respondent being a resident of Boise county, and not of Ada county, the court, in granting the certificate, acted without jurisdiction. Proper service was made upon the respondent, who, appearing in person, has filed a demurrer questioning the sufficiency of the petition to entitle the government to any relief. At the hearing of the demurrer the government was represented by Mr. Andrew J. Balliet, of the Bureau of Immigration and Naturalization; no argument, either oral or written, being submitted upon behalf of the respondent.

Section 3 of the naturalization act referred to provides that exclusive jurisdiction to naturalize aliens as citizens of the United States shall be exercised by United States Circuit and District Courts, by certain territorial courts, and by "all courts of record in any state or territory now existing, or which may hereafter be created, having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited." It is further provided that the jurisdiction of all courts specified "shall extend only to aliens resident within the respective judicial districts of such courts."

By section 15 of the act, it is made the "duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of setting aside and canceling the certificate of citizenship, on the ground of fraud, or on the ground that such certificate of citizenship was illegally procured." It is further prescribed that:

"Whenever any certificate of citizenship shall be set aside or canceled, as herein provided, the court in which such judgment or decree is rendered shall make an order canceling such certificate of citizenship, and shall send a certified copy of such order to the Bureau of Immigration and Naturalization; and in case such certificate was not originally issued by the court making such order, it shall direct the clerk of the court to transmit a copy of such order and judgment to the court out of which such certificate of citizenship shall have been previously issued. And it shall thereupon be the duty of the clerk of the court receiving such certified copy of the order and judgment of the

court to enter the same of record, and to cancel such original certificate of citizenship upon the records, and to notify the Bureau of Immigration and Naturalization of such cancellation."

Section 11 of article 5 of the Constitution of Idaho provides that:

"The state shall be divided into five judicial districts, for each of which a judge shall be chosen by the qualified electors thereof, whose term of office shall be four years. And there shall be held a district court in each county at least twice in each year, to continue for such time in each county as may be prescribed by law, but the Legislature may reduce or increase the number of districts. * * *"

At the time the naturalization proceedings herein referred to were had, Ada county and Boise county constituted the Third judicial district, of which Hon. Fremont Wood was the qualified and acting district judge. It is not doubted that the state district courts have naturalization jurisdiction; but the question presented is whether or not the district court of any district can, while sitting in one county, entertain a petition for naturalization presented by a resident of another county of such district. It is contended, upon behalf of the government: That, for the purposes of territorial jurisdiction, the county is to be regarded as the unit, and that the "judicial district" of the Constitution has reference only to the territory from which the judge is elected or appointed, and in which he performs his official functions; that the district court of Ada county is an entity distinct from the district court of Boise county; and that therefore, when the federal statute limits the naturalization jurisdiction of the court to the judicial district of such court, it limits the jurisdiction of the district court in and for Ada county to the applications of aliens resident within that county.

In support of this view, attention is called to the fact that officers of the court, other than the judge, are elected from the county, and not from the district, and are looked upon as county officers. Jurors are chosen from residents of the county, and not of the judicial district. In the main, the criminal jurisdiction of the court is confined to offenses committed within the county, and, generally, civil actions are to be brought and tried in the county where the property is situate or the defendant resides. Moreover, in making application of the naturalization act to the judicial system prevailing in Idaho, the fact that the term "district" is used both in that act and in the Constitution and statutes of the state is without significance. If in Idaho, as in some states, the judicial subdivisions were designated as "circuits" instead of "districts," and the courts were called "circuit courts" instead of "district courts," the problem would be precisely the same. The conclusion reached in the United States v. Schurr (D. C.) 163 Fed. 648, favors the petitioner's contention.

Upon the other hand, it may be urged that, when the Constitution was adopted, provision was made not only for a district judge, but for a district attorney, whose territorial jurisdiction corresponded to that of the judge. The official court stenographer is appointed for the district, and not for the county. Section 6 of article 18 of the Constitution, relating to county organization, provides for county officers whose term of office is two years, but no reference is there made to the clerk

of the district court. Upon the other hand section 16 of article 5, which has to do with the judicial department of the government, provides that:

"The clerk of the district court for each county shall be elected by the qualified electors thereof at the time and in the manner prescribed by law for the election of members of the Legislature, and shall hold his office for the term of four years,"

—which is the term provided for the district judge and the district attorney. Among other things, section 4140 of the Revised Codes of Idaho, prescribing the contents of the summons to be issued in civil actions, provides that it shall direct the defendant to "appear and answer the complaint within twenty days, if the summons is served within the district within which the action is brought, and within forty days if served elsewhere"; the term "district" being used to designate, not a county, but a judicial district. By section 3890 of the Revised Codes, extensive power is conferred upon the district judge sitting at chambers "anywhere within his district." He may even go so far as to receive a plea of guilty in a criminal case and impose sentence. Sections 3831 and 3832 of the Revised Codes apparently negative the idea that in the same district, district court can be in session in two counties at the same time, thus perhaps militating against the view that the court in each county is a distinct entity, and favoring the view that each district has one court, which, however, convenes or sits in each county.

From this statement of the case it must be apparent that the question submitted is not free from doubt, and that, primarily, it involves a construction of the Constitution and statutes of the state. Incidentally, to be sure, the naturalization act must be interpreted; but, given an authoritative construction of the state laws, it is not thought that the application of the federal act would be attended with any grave doubt or difficulty. Although not expressly alleged, it may be presumed that the record in the matter of the naturalization of respondent at the time of the hearing of his application disclosed the fact of his residence in Boise county. From statements made by counsel for the government at the oral argument, it may also be fairly inferred that the precise question now under consideration had the court's attention, and that it deliberately reached a conclusion adverse to the government and favorable to its jurisdiction. Notwithstanding this adverse decision upon a point of law clearly disclosed upon the face of the record, no steps were taken for a review by the Supreme Court of the state, where alone may be had an authoritative construction of the local law, which, as has been observed, is the controlling feature of the issue here submitted. Moreover, the respondent is still a resident of the Third judicial district of Idaho, and, under the provisions of section 15 of the naturalization act, this proceeding might have been commenced in the state district court in Boise county, if not in Ada county, thus respectfully giving to that tribunal an opportunity to review its own records, and to the government, in case of an adverse ruling, the right of an appeal to the Supreme Court of the state. In matters of naturalization the United States District Court for Idaho and the state district court for the Third judicial district of Idaho are

courts of co-ordinate power, exercising concurrent jurisdiction. Inferior courts of a common origin, and having equal authority, while proceeding independently to adjudicate distinct and independent controversies, not·infrequently accept as precedents, and follow, each other's decisions upon doubtful questions of general law, to the end that there may not be a babel of judicial expression, in the absence of an authoritative ruling by appellate tribunals. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; New York Filler Co. v. Jackson (C. C.) 112 Fed. 678. Even superior courts of co-ordinate jurisdiction are inclined to a similar practice. Gill v. Austin, 157 Fed. 234, 84 C. C. A. 677. But if, under such circumstances, considerations of comity are sufficient to warrant uniformity of decision until a higher court can settle the law, like considerations under the conditions here existing are little less than mandatory. This court is not urged merely to reach a conclusion out of accord with that of the state court upon a question raised in an action entirely independent of the proceeding in the state tribunal. This is not an application for relief against a judgment of another court, procured by fraud or by a representation of facts now known to be untrue. By the petition here this court is asked to review merely a legal conclusion, deliberately adopted by a court of co-ordinate jurisdiction, upon a question arising upon the same facts as are here presented, and virtually to send its process into that court requiring it to vacate and set aside its own judgment. Such a function is in its nature revisory, and necessarily implies superiority, which, under the general provisions of the law, this court does not possess. Little Rock Junction Ry. v. Burke, 66 Fed. 83, 13 C. C. A. 341; Blythe v. Hinckley, 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783.

But assuming that the court cannot decline to entertain the petition, every consideration of comity, if not of judicial courtesy, requires that a conclusion be reached in harmony with that of the state court. Any other policy would be intolerable, resulting in confusion of judicial decision and the consequent bewilderment of suitors, and also engendering antagonisms between the courts. If in this matter this court can to-day set aside the judgment of the state district court, there is no reason why that court may not to-morrow send its process here, directing the vacation of an order of this court in some other naturalization matter, should the government feel aggrieved and apply to it for relief. With the growing complexity of state and national relations, and in view of the ever-increasing conflict of jurisdiction between the state and the federal courts, it is of the highest importance that in exercising their powers the courts of one class shall proceed with scrupulous regard and due deference to the dignity and rights of the courts of the other class.

Not insensible of the embarrassment which the court must necessarily experience in entertaining the petition, counsel for the government explained that the proceeding was brought here rather than in the state court because, having supervision of matters of naturalization in several states, he found it physically impossible to attend upon the state courts, on account both of the great number of their terms and the fact that in many instances they sit in remote places, difficult

of access. Some force might be accorded to this explanation if we were considering only the convenience and personal preferences of the courts, but public interests are involved. As was said in Mast, Foos & Co. v. Stover Mfg. Co., supra, comity "is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision and discouraging repeated litigation of the same question." Moreover, it may be remarked that it is not one of the functions of the Bureau of Immigration and Naturalization, or of its representatives, to prosecute proceedings of this character. That duty is, by the plain provisions of the act, imposed upon the United States district attorney, where it properly belongs, and there is no reason for presuming that the department of justice will fail to provide him with adequate assistance for the proper performance of his official duties.

Under the circumstances, an expression of opinion as to the correctness of the state court's ruling, even if proper, would be without advantage. It is sufficient to say that the question is not free from doubt.

In that view, and for reasons already given, considerations of comity require that the demurrer be sustained, and the petition dismissed, and it is so ordered.