## ANDREWS and others *v.* SMITH and others.

*(Circuit Court, D. Vermont.* February 22, 1881.)

1. JURISDICTION—STATE AND FEDERAL COURTS—COMITY—RECEIVERS—MORTGAGE TRUSTEES—ACCOUNTING.

In a suit by the first-mortgage bondholders of the Vermont Central Railroad against the mortgage trustees, for holding said trustees accountable for moneys alleged to have been taken by them from the trust funds in their hands in violation of their trust, the defendants pleaded that during the period of the accounting called for they had been in possession of the railroad as receivers or officers of the court of chancery of Franklin county, Vermont, and, as such receivers, had already rendered an account to said court of chancery for the sums claimed in this suit, and so they could not be held chargeable therefor in any proceeding for that purpose in this court; or that if they were otherwise so chargeable, yet as the same subject-matter was previously before the state court for adjudication, this court should dismiss the plaintiffs' bill, out of comity towards the state court. The defendants also contended that if they had ceased to be receivers of the state court prior to the origin of the demand in suit, yet no order for discharging them as receivers had ever been entered in the state court, and that this court should still regard them as official receivers of the state court. *Held,* that the *receivership* formerly existing in the state court had practically ceased prior to the period covered by the accounting claimed in this case, and that the state court had so determined, and that, as the parties themselves had brought the receivership to a close by their own acts, no formal entry in court of such discharge was necessary, and that, as the parties to the proceeding in the state court were not the same as the parties in this case, the pendency of such proceedings would be no bar to this suit. *Also held,* that the rule of comity towards the state court could not operate to deprive this court of its own rightful jurisdiction.

In Equity. Demurrer and plea to jurisdiction.

*W. G. Shaw* and *F. A. Brooks,* for plaintiffs.

*B. F. Fidfield* and *L. P. Poland,* for defendants.

WHEELER, D. J. The defendants, citizens of Vermont, are trustees and representatives of trustees under the first mortgage of the Vermont Central Railroad, who have been in possession, after a default of payment, of that and the Vermont & Canada Railroad, (subject to a prior lien upon the income of both roads,) to secure the payment of rent to the Vermont & Canada Railroad Company.

The orators, citizens of Massachusetts, are holders and

owners of the first mortgage bonds, and bring this bill, alleging in substance that the defendants, as such trustees, have received from the income of the roads large sums of money, —at one time $56,000, and at another $50,000,—after satisfying all prior claims for rent; and at still other times $210,-000 more than enough to pay the rent, which they have applied to their own uses and to other purposes, and have failed to pay over to the bondholders, to whom the money belongs.

The defendants who are representatives of Joseph Clark, deceased, have demurred to the bill because the Vermont & Canada Railroad Company, as prior lienholder upon the funds, and the subsequent lienholders are not made parties. The other defendants have pleaded the pendency of proceedings in a court of chancery of the state to the jurisdiction of this court. The orators have set the plea down for argument, and the cause has been heard upon the demurrer and plea.

The proceedings in the court of chancery were brought to enforce the lien for rent, and resulted in the appointment of these trustees of the first mortgage, while so in possession, receivers to raise funds to pay off the rent before applying the income to these mortgage bonds. Afterwards an agreement was made between the parties changing the basis of the rent, and providing for certain things to be done and specific payments to be made, and that then the trustees should pay, first, the rent; second, the first mortgage bonds; third, the second mortgage bonds, and then the mortgagor; and that there should be a decree in the cause to be binding on all parties in interest in both roads. A decree was made accordingly, founded on this consent, but which went further than the agreement, and provided also for a settlement of the accounts of the trustees and receivers by a committee of bondholders, and (on objection) by the court, and that the cause should be retained in court, with liberty to the parties to apply to the court for further orders therein as they might be advised. It was while the trustees were in possession under this arrangement that the trustees received the money sought by the orators. Afterwards they were, at their own request, discharged from the possession of the property by an

order of court, placing it in other hands, which provided for the settlement of their accounts, and that they should remain subject to the order and protection of the court until their accounts should be settled. An account has been taken by masters of that court of all their receipts and expenditures while so in possession of the roads and property, which includes all the items claimed by the orators, and which is now pending in that court.

Important questions concerning the jurisdiction of the state court and this court arise upon these pleadings, and their consideration has been approached with such care, examination, and circumspection as their gravity has seemed to demand. The jurisdiction of the two courts as to these matters is concurrent, as is expressly provided by the law of congress providing for this court, and which on this subject is paramount. U. S. Rev. St. § 629; Act of March 3, 1875, § 1; 18 U. S. St. at Large, 470.

In creating the circuit courts and providing for their jurisdiction care has always been taken to prevent any conflict between them and state courts, and generally the courts themselves have been diligent each to so keep within the prescribed bounds that there should be no appearance even of interference by one with the other. To that end, when either court has, by its process or its officers, taken any property or subject of litigation into its custody, the other has carefully refrained from interfering with the custody or the litigation in which it was taken. When one court has possession the other will not take any proceedings which will interfere with the possession, and when one has cognizance of any litigation the other will not take cognizance of the same litigation. *Stanton* v. *Embrey*, 93 U. S. 548, cited for the orator to the contrary of this, was not in the same state with the state court, and therefore did not come within the provision as to concurrent jurisdiction; and *Cook* v. *Burnley*, 11 Wall. 668, was not between the same parties as the suit in the state court.

It is the interference with the possession of another court which would ensue, that prevents taking jurisdiction in that class of cases; and the pendency of the same identical con-

troversy in another court of concurrent jurisdiction that prevents it in the other. Receivership, or other possession of the court, is not in the way, unless interference with it would be led to. Neither is the pendency of other litigation, unless it is identical as to subject and parties.

An examination of some of the most prominent cases upon these subjects shows these distinctions:

In *Slocum* v. *Mayberry*, 2 Wheat. 1, it was held that property seized by custom officers could not be replevied by process from a state court.

In *Harris* v. *Dennie*, 3 Pet. 292, that goods in like situation could not be attached upon such process.

In *Hogan* v. *Lucas*, 10 Pet. 400, that property in custody of a state sheriff could not be taken by a United States marshal.

In *Wiswell* v. *Sampson*, 14 How. 52, that property in the hands of a receiver of a state court could not be levied upon by the United States marshal in behalf of a judgment creditor.

In *Taylor* v. *Caryl*, 20 How. 583, that a vessel in custody under proceedings of foreign attachment in a state court could not be taken by the marshal under process in admiralty from a United States district court.

Still, in *Buck* v. *Colbath*, 3 Wall. 334, it was held that the principles of these cases did not prevent maintaining a suit in a state court, in favor of the owner of property, against a United States marshal for attaching it as the property of another on process from a United States circuit court. Mr. Justice Miller, in delivering the opinion of the court, said it was "a principle which is essential to the dignity and just authority of every court, and to the comity which should regulate the relations between all courts of concurrent jurisdiction." "This principle, however, has its limitations; or, rather, its just definition is to be attended to. It is only when property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts."

The property out of which this litigation arises is not now in the possession of the defendants, either as receivers of

a court or otherwise; that possession has been changed to other hands, as the pleadings show. Neither is the suit such an one as would affect the possession of the property in any way. It is merely a suit *in personam* for an account of moneys. Still, the property from which these moneys arose was for a time in the hands of the defendants, as receivers of the state court, for the purpose of raising funds to be applied under the direction of that court. As such receivers, they were officers of the court; their possession was the possession of the court; the funds realized were to be paid into the court, or disposed of under the direction of the court; and this jurisdiction over the receivers, the property, and the funds necessarily drew to it the decision of every question concerning the receivers in that capacity, the possession of the property during that time, and the disposition of the funds realized. *Anon*. 6 Ves. 287; *Angel* v. *Smith*, 9 Ves. 335; *Booth* v. *Clark*, 17 How. 322.

So, if this receivership covered the period of the accounting now sought, that court has the claim of the orators to the funds realized pending before it, that litigation is so far identical with this litigation here, and that court, and not this, has jurisdiction of it. In *Peck* v. *Jenness*, 7 How. 612, Mr. Justice Grier said: "It is a doctrine of law too long established to require citation of authorities that when a court has jurisdiction it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court."

The counsel for the orators insist that the receivership did not continue after the compromise, agreement, and decree, so as to cover the period in question, and that there was no proceeding pending in the state court during that time which would involve this question between the bondholders and their trustees; and the counsel for the defendants insist that there was such a judicial administration of this property during all that time as to involve this claim of the orators, and preclude the jurisdiction of all other courts. The determination of this question depends upon the true construction

to be given to the proceedings of the court, their scope and effect. These proceedings have been twice before the highest court of the state for construction as to their effect upon the receivership, and as they are state proceedings, under state laws, the interpretation of them by the state court ought to control. But counsel do not agree as to what the construction was at either time, in all respects. Careful attention has been given to these cases in order to follow them as to the construction put upon these proceedings, so far as one has been given.

The Central Vermont Railroad Company, a corporation created by the legislature of the state, with express power, among others, "temporarily to operate said roads, subject to the order of the court, in the case of the Vermont & Canada Railroad Company and others against the Vermont Central Railroad Company and others, pending in Franklin county in chancery," by order of that court, succeeded the defendants in the possession and management of the roads, and applied to the court by petition in that cause for leave to sell the roads and property for the payment of trust debts contracted by the defendants, claiming that they were receivership debts, chargeable as such as a first lien upon the property. The petition was denied, and that decision on appeal was affirmed. *V. & C. R. Co.* v. *V. C. R. Co.* 50 Vt. 500.

The court, after an elaborate examination of all the proceedings, and authorities bearing upon them, appears to have held, that, after the compromise agreement and decree, the relations between the parties towards the property, in respect to its managment, became changed so that a management for the parties through their own agreement took the place of a management by order of court.

In the opinion of the court, *Barrett, J.*, speaking of the compromise decree, said: "It was devised and put in form as the outcome of the mind and will of the parties as the mode of consummating into validity a mutual arrangement by the parties as to their respective rights and interests, and as to the mode and means by which the property was to be held and used in serving and satisfying those rights and

interests. That decree adopted what had been created by the court as a receivership, as known and warranted by the law; but the administration of it was not left to the judicial judgment and direction of the court under the law authorizing and governing a receivership known to the law as such. Instead thereof, the parties enacted a code *ex contractu* for the administration of the property, and provided *ex contractu* that there should be the formality as of a decree supervening thereupon. Since that the administration has proceeded in pursuance of that fact, and of that formality, practically an administration by the agreement of leading real and representative persons and parties."

In *Langdon* v. *V. & C. R. Co.* a bill was afterwards brought by these security holders for the purpose of ascertaining the priority of the debts, with reference to security upon the property *as receivership debts.* After another very elaborate and exhaustive examination of these proceedings, it appears to have been determined that, as the lessor, as holder of the lien for rent, and the first mortgage bondholders and other security holders, suffered the persons in possession to be held out as receivers, acting under the authority of the court, and as such authorized to contract these debts, those who advanced money upon the faith of that authority would have a right to the same priority that regular receivership debts would have created. *Royce*, J., in delivering the opinion of the court, (pamphlet, page 51,) said: "The rights and liabilities of the parties are not dependent upon the rules of law as understood and administered in a strict receivership. The Vermont & Canada Railroad Company has so conducted that it is estopped from denying that the acts of the receivers, while acting as such, are as binding upon it as the acts of strict receivers would have been; hence the payment of the rent claim of the Vermont & Canada Railroad Company must be postponed to the payment of the bonds issued by the receivers. As between the *bona-fide* holders of the bonds so issued, and those that have been received in exchange for them, and the Vermont Central Railroad Company, the mortgage bondholders, and the Vermont & Canada Railroad Com-

pany, the former have the superior right, and must be first paid." Further on the court said that it did not intend to overrule the former decision of the court, but had built upon the foundation there laid.

These cases do not settle definitely whether, in the opinion of the state court, the proceedings have so drawn the litigation in respect to the property into the court of chancery as to exclude all other courts. To exclude other courts that court should be so administering the property, by virtue of its prerogative and functions as a court, as to draw the control of the property and its avails to the court as such, and to make the decision of questions respecting it necessary in order to award it to the rightful claimant and put it out of court. These cases tend strongly in the direction that there was not such an administration as this, and certainly fall far short of showing that there was.

The compromise agreement itself did not provide for any further proceedings in court beyond such a decree in the pending cause as should render the agreement legal and binding on all parties interested in the roads. The petition on which the decree was made did not purport to be for anything further than carrying out the agreement. The decree was founded upon the consent contained in the agreement, the want of objection by parties appearing, and the default of those not appearing. It provided for the settling the accounts of the trustees and receivers by a committee of bondholders, and, on objection, afterwards by the court; and that the cause should be continued on the docket of the court, with liberty to any party to apply to the court, from time to time, for further orders in the premises, as he or it might be advised. There was no judgment of the court beyond the consent, and this part of the decree had no consent to rest upon, other than that of those who participated in making it ready for the signature of the chancellor. The putting the agreement in the form of a decree added nothing to the force and effect which the agreement would otherwise have. *V. & C. R. Co.* v. *V. C. R. Co.* 50 Vt. 500.

This agreement, standing on its own evidence, or so authen-

ticated, would confer no power upon the court, as such, to take jurisdiction of questions arising under it, without original proceedings in regular course. *Myers* v. *Johnston*, Sup. Court Ala. cited 50 Vt. 571, and other cases there cited and approved. So jurisdiction of the court of chancery over the litigation in this cause cannot be made out from that provision in the decree alone. Proceedings have been carried forward in that cause under that provision in that decree, and doubtless all who may have participated in those proceedings are bound by the results of them, and perhaps those taking part in the proceedings still pending have no right to seek any other jurisdiction for relief touching the same matters. But these orators do not appear, either from the allegations of the plea or by the proceedings themselves, to have ever become parties to these proceedings. That the state court may have jurisdiction of some of the parties to this suit, concerning the property involved, for some purposes, would not necessarily exclude this court from cognizance of the same parties in a suit relating to the same property for other purposes. This is not contrary to *Mallett* v. *Dexter*, 1 Curtis, 178, cited for the defendants, and is in accordance with many other cases. In that case the accounts of an administrator were pending in the state court which appointed him. The plaintiffs there brought that bill in the federal circuit court to settle the same accounts for the same purpose. Jurisdiction by the federal court was denied because of that identity.

In *Erwin* v. *Emery*, 7 How. 172, while an estate was in process of settlement in a state court, proceedings to foreclose a mortgage upon it were taken in the federal circuit court. Objection was made that the state court had first acquired jurisdiction over the property, and all claims upon it, to the exclusion of the other court; but the objection was overruled.

In *Suydam* v. *Broadnax*, 14 Pet. 67, it was held that proceedings for the settlement of an insolvent estate, in a state probate court, before commissioners of which all claims were by the state law to be proved, would not prevent a suit in favor of a claimant, a citizen of another state, against the administrator in the circuit court of the United States. Mr.

Justice Wayne said, after stating the provisions of the judiciary act giving the circuit courts concurrent jurisdiction with the state courts: "It was certainly intended to give to suitors having a right to sue in the circuit court remedies co-extensive with those rights. These remedies would not be so if any proceedings under any act of a state legislature to which a plaintiff was not a party, exempting a person of such state from suit, could be pleaded to abate a suit in the circuit court."

In *Union Bank* v. *Jolly*, 18 How. 503, the same was held as to a claimant who had brought a bill to reach a residue of an estate remaining in the hands of the administrator for distribution, without proving his claim before the commissioners. *Green* v. *Creighton*, 23 How. 90, was between two sets of administrators, and the pendency of proceedings in insolvency in the state court, upon the estate of which the defendants were administrators, was pleaded to the jurisdiction of the federal circuit court. The case was elaborately argued, and the previous cases were referred to and reviewed by the court. In conclusion, Mr. Justice Campbell said: "Thus it will be seen that under the decisions of this court a foreign creditor may establish his debt in the courts of the United States against the representatives of a decedent, notwithstanding the local laws relative to the administration and settlement of insolvent estates, and that the court will interpose to arrest the distribution of any surplus among the heirs."

*Shelby* v. *Bacon*, 10 How. 56, was in favor of a non-resident creditor against assignees of an insolvent debtor under the laws of Pennsylvania, who pleaded to the jurisdiction of the United States circuit court that the court of common pleas of the city and county of Philadelphia had ample power to enforce the trust in regard to the rights of all parties claiming an interest therein; that the defendants had at different times filed their accounts, duly verified, of their receipts and disbursements, with the prothonotary of that court, which were sanctioned by the court; and that under its direction they had invested large sums of money to await the result of pending litigations. This plea was set down for argument, and passed to the supreme court on a certificate of division,

where it was overruled. Mr. Justice McLean, in delivering the opinion of the court, after stating some defects in the plea in setting out the proceedings in the state court, said: "But if the plea had been perfect in this respect it would not follow that the complainant could not invoke the jurisdiction of the circuit court. He, being a non-resident, has his option to bring his suit in that court, unless he has submitted, or is made a party in some form to the special jurisdiction of the court of common pleas." "No suit seems to be pending in the common pleas. The action of the assignees appears to be voluntary, for their own justification, and not in obedience to the order of the court. By the statute any person interested may, on application to the court, obtain a citation to the assignees to appear and answer. But this is nothing more than the ordinary exercise of a chancery power to compel them to account."

The situation of these defendants, as to accounting to the court of chancery, is very much like that of those there as to accounting to the court there. When the compromise agreement was made the trustees were, as has been before stated, in possession, and were also receivers to raise the rent due the lessor from the income. That agreement made provision for all rent then due, and provided a new basis for it thereafter, for certain specific payments, and for the application of the residue of the net income; and then that "all claims and demands between the parties hereto, not herein otherwise provided for, shall be waived and abandoned, and no further claim or proceeding shall be made or had in respect thereto." The agreement was carried into effect, but the trustees were not otherwise formally discharged as receivers, and because they were not formally discharged it is said that the receivership continued. But a receiver is the hand of the court, and whatever property he holds is held for the court. After that agreement there was no property left in the custody of the court for a receiver to have. The parties had provided for the custody and disposition of the property, and left nothing for the court to do about it. There was no occasion for the court to discharge them, for the parties them-

selves had accomplished the discharge. Had any party insisted upon their continuing as receivers as against the bondholders, the request could not well have been granted.

In *Davis* v. *Duke of Marlborough*, 2 Swanst. 113, a receiver of the rents of an estate to raise funds to keep down an annuity, on the acceptance by the annuitant of the price of the annuity, was refused to be continued at the request of other parties. *R. Co.* v. *Soutter*, 2 Wall. 510, is to the same effect.

Unless the court of chancery had jurisdiction of this matter, because these funds were in the custody of that court, the accounting being had is not, upon any mode of procedure, to bind those not expressly parties to it. Courts must act according to established modes of procedure in due course; and outside of these modes their judgments and decrees are not binding as such. *Windsor* v. *McVeigh*, 93 U. S. 274.

The original bill is the only proceeding, according to the established mode of procedure, affecting this part of the case in the court of chancery, and the scope of that bill did not include payment to the bondholders. *V. & C. R. Co.* v. *V. C. R. Co.* 50 Vt. 500.

These bondholders bring this bill against the defendants as their trustees, alleging the receipt of moneys belonging to the bondholders not accounted for to them. That they are accounting to some other person elswhere does not seem to be any good reason for not answering this bill.

The principal ground of demurrer appears to be that the lessor, the Vermont & Canada Railroad Company, is not made a party to the bill. As the claim of the orators is now understood, there seems to be no ground for joining that party. The orators do not set up any claim in opposition to those of that company. They admit its prior right to the rent to the full extent, but set up that, after yielding to that right and satisfying it, these sums have remained in the hands of the trustees of the orators belonging to the orators, and they ask an accounting only for the amounts so remaining. The case in this respect, as well as in some others, is like *Payne* v. *Hook*, 7 Wall. 425, where a non-resident distributee of an estate brought a bill in the circuit court of the

United States against an administrator for an account of the assets and payment of her share, without making other distributees parties. The bill was demurred to for that cause, and also because that, by the laws of the state, all such matters were required to be settled in the probate courts of the state where the administration was being had. The circuit court dismissed the bill, the oratrix appealed, and the decree was reversed. On this point Mr. Justice Davis said: "It can never be indispensable to make defendants of those against whom nothing is alleged, and of whom no relief is asked."

This court has been urged, with much persuasiveness, not to retain this bill, on account of a comity towards the state court beyond the effect of the plea. Such comity, if it exists, is not mentioned in the books treating upon this subject, so far as has been observed. The decisions referred to, and the language of the courts and judges stated, show that courts of one jurisdiction respect those of another jurisdiction, in taking cognizance of causes, only so far as not to interfere with them or their judgments. If they should withdraw from the bounds of their jurisdiction, and the others should do the same, there might be parties and cases in the space between not recognized by either. It can be no disrespect to either for the other to maintain its own jurisdiction, if it does no more. This court would not trench in the slightest degree upon the prerogatives of the state courts, for which it holds the highest respect. No decision which this court can make upon this case, either one way or the other, will do so. That court has no case between these bondholders and their trustees before it, so far as this case shows. It will have no occasion to decide whether the trustees or the bondholders are entitled to these moneys without the bondholders before it. This court has no one but the bondholders and the trustees, or their representatives, before it, and upon this case will have no occasion to decide upon any question except between them. These causes—one between the bondholders and their trustees, and the other between the trustees and still other persons— are quite distinct, and may well be pending in different courts.

Demurrer overruled and plea disallowed.