**JOHNS et al. v. CITY NAT. BANK & TRUST CO. et al.**

**No. 9229.**

Court of Civil Appeals of Texas. San Antonio.

Jan. 31, 1934.

Rehearing Denied March 7, 1934.

Templeton, Brooks, Napier & Brown, of San Antonio, J. S. McCampbell, I. W. Keys, and Hubbard & Dyer, all of Corpus Christi, and Robert H. Hamilton, of Amarillo, for appellants.

B. D. Tarlton, of Corpus Christi, and S. W. Marshall, of Dallas, for appellees.

FLY, Chief Justice.

This suit was brought by C. D. Johns, president of the Corpus Christi independent school district, and the other members of its board of trustees, against the City National Bank & Trust Company of Corpus Christi, Tex., and its receiver and the sureties on two different bonds executed by said bank to the school district for the sum of $105,408.39.

The cause was tried by the court, without a jury, and judgment rendered in favor of the school district for $105,408.39, as against the City National Bank & Trust Company and its receiver and the sureties on the second bond given by the bank for the faithful performance of its duties as depository of the school district. Judgment was denied the school district against the sureties on the first bond, as well as a judgment in favor of the sureties on the second bond against the sureties on the first bond. Appeals have been perfected by the school district and by T. A. McKamey and James B. Hubbard, two of the sureties on the second bond.

The facts are that on August 19, 1929, the City National Bank & Trust Company, hereinafter referred to as the bank, was appointed depository of the funds of the school district and was directed to give a bond in the sum of $300,000. This was done on August 22, 1929, for the term of two years, from September 1, 1929, to August 31, 1931, and such bond was approved by the board of trustees of the school district, on September 4, 1929, and filed with the state department of education at Austin, on September 14, 1929. The sureties on this first bond were Clark Pease, W. R. Norton, M. A. Pease, W. C. Sparks, and W. L. Pearson.

On September 10, 1931, the same bank was selected as depository for the school district, for the two years beginning September 1, 1931, and ending August 31, 1933, and was directed to furnish a bond for $300,000, satisfactory to

the school district. This second bond was dated September 16, 1931, was signed by the bank as principal, and James B. Hubbard, T. A. McKamey, W. R. Norton, Myron A. Pease, P. V. Alexander, and W. C. Sparks, as sureties, and was, on September 23, 1931, delivered to the school district for approval. This bond was approved by the school district on November 3, 1931, a few minutes before 3 o'clock p. m.

On the morning of November 3, 1931, the federal bank examiner took charge of the bank and instructed the officer to receive deposits but to keep them separate from the balance of the funds of the bank, so that, if necessary, they could be returned to the depositors. The bank was not reopened after November 3, 1931. The bank, on the morning of November 3, 1931, did not have funds to pay the school district what it owed, and had not had such funds since the 1st day of September, 1931. At the time the second bond was signed by the sureties, no accounting was demanded by them or received from the bank. The bank, at the time that the second bond was placed in the hands of members of the board of trustees of the school district, was not in possession of the funds of the district. The facts clearly show that the board of trustees knew that the bank was in a failing condition, and also realized that they had not approved the new bond because one meeting was called to approve the bond, and, no quorum being present, no approval took place until the bank examiner had virtually taken possession of the bank and had it acting under his orders.

The board of trustees did not claim to have approved the bond, but showed by their act that they knew it had not been approved, for they called one meeting which was not attended by a quorum, and then, in the afternoon of the day on which the bank was virtually closed by the bank examiner, another meeting was called and the bond formally approved. There is no testimony that indicates that any deposit was put in the bank after the execution of the second bond, in reliance on that bond. The trustees showed by their acts that they did not claim that a bond had been executed and approved.

■ The law applicable to school districts is found in article 2832, Revised Civil Statutes 1925 as amended by Acts 1931 (1st Called Sess.) c. 27, wherein it is provided that the depository shall be named by the board of trustees of the district, which shall be the treasurer of the board, and he shall be required to give a bond in the sum of all funds coming into his possession. The depository in this case under the first bond was the same which was appointed as the new depository, and the second bond was required for the new depository. It is clear that the bond required to be given by the new depository contemplates the funds that shall come into the hands of the depository after the execution of the bond, whether it be by turning over the funds in the depository at the time or those collected thereafter. There is nothing in the law that indicates that the bondsmen for the new depository shall be liable for defalcation or misapplication of funds in the former depository. We think the same rule would apply when the old depository is reappointed as would apply if a new depository is selected. It is, however, unnecessary to dwell on this phase of the case because the facts fail to indicate that the new bond was ever accepted or approved by the board of trustees until the bank had ceased operations and was in the hands of the bank examiner. The appellees' proposition that the approval of the bond on November 3 rendered the bondsmen responsible, although at the time the bank had failed and this was known to the board of trustees, who were attempting to place their burdens on the sureties on the new bond, would. be sustaining the perpetration of a fraud upon the sureties on the new bond. The trustees knew that nothing could possibly come into the hands of the depository, belonging to the school district, and the whole scheme was to lift responsibility from the sureties on the first bond and make the new sureties responsible for the appropriation of funds by the bank before the new bond was executed.

To make the second bond effective, it was necessary that the board of trustees should accept and approve it, and, as the approval did not take place until the practical failure of the bank, no funds could have possibly been deposited in the bank by the school district thereafter.

The article of the statute cited provides that the bond shall be approved by the school board, although it is contended by appellees that there is no such provision in the article relating to a school district. Not only does it require that the bond be approved, but it requires that it be satisfactory, and, of course, that means satisfactory to the school district. Such approval and satisfaction can only be evidenced by action of the board of trustees, and in this case no such action was taken until it was attempted to hold the new sureties responsible by approving the bond,

after the bank had passed into the hands of the bank examiner.

The authorities cited by appellees to sustain the judgment in this case are: New Liberty School District v. M. & P. Bank (Tex. Civ. App.) 273 S. W. 330; Kopecky v. City of Yoakum (Tex. Civ. App.) 35 S.W.(2d) 492; and Linz v. Eastland County (Tex. Com. App.) 39 S.W.(2d) 509, 77 A. L. R. 1466, and are easily distinguishable from the case under consideration, in that in each of the cited cases the bank was a going concern when the bond was executed, delivered to, and approved by, the board of trustees. In each one of them funds were daily coming into the hands of the depository, and, unlike this, a live, active bank was in existence. We do not mean to hold that a bond might not be held binding when executed when the bank was insolvent, but we only hold that in this case, under the circumstances surrounding it, with the bank actually out of business, it would be upholding a fraud to permit the board of trustees to approve a bond which they had in no way accepted before the failure of the bank. There is not one circumstance to indicate acceptance or approval of the bond before November 3. The change of the rate of interest made by the bank was not an act of the board of trustees, but that of the bank alone, and could not be deemed a circumstance tending to show acceptance of the bond. While the bond may have been acceptable to some members of the board of trustees, there was no action of the board of trustees indicating acceptance, either directly or impliedly.

Under the terms of the first bond, the sureties were not only liable up to September 1, 1931, but, according to the language of the bond, they were liable "until its successor as depository has filed a satisfactory bond with the State Department of Education at Austin, Texas." Such deposit was not made until January 16, 1932, long after the bank had failed. We think it clear that the sureties on the first bond were liable to the school district for the fund deposited by that district in the bank and remaining unpaid at the time of the failure of the bank.

It is the order of this court that the judgment of the lower court be reversed and that judgment be rendered in favor of the school district against the bank and its receiver and the sureties on the first bond, and that the school district take nothing by its suit against the sureties on the second bond, and that all costs of suit be assessed against the City National Bank & Trust Company and against Clark Pease, W. L. Pearson, W. R. Norton, M. A. Pease, and W. C. Sparks, and against the estates of said sureties who may have died.