MEEK v. REPUBLIC NAT. BANK & TRUST CO. (SAPT. A. G. FUR TEXTILPRO-DUKTE et al., Interveners).

No. 619.

District Court, S. D. Texas, Houston Division.

Jan. 15, 1935.

652

Huggins, Kayser & Liddell, of Houston, Tex., for receiver.

S. W. Marshall, of Dallas, Tex., for trustee.

D. B. Tarlton, of Corpus Christi, Tex., for Myron A. Pease.

Albert W. Searcy, of Corpus Christi, Tex., for Mrs. Emma Pease.

Kampmann & Burney, of San Antonio, Tex., for Marie Crook and daughter.

I. W. Keys, of Corpus Christi, Tex., for Corpus Christi Independent School Dist.

WEST, District Judge.

■ Receivers and trustees are indifferent persons who administer properties for beneficiaries, exercising administrative and quasi judicial functions, within prescribed limits. The original files not being available, the briefs and arguments submitted by receiver and trustee will be used as bases for this opinion, which is intended to serve as the court's findings and conclusions of fact and of law.

■ Plaintiff, Malcom M. Meek, receiver of the City National Bank & Trust Company of Corpus Christi, Tex., by appointment of the Comptroller of the Currency, sues to enforce a 100 per cent. assessment against 8,800 shares of the bank's stock held by trustee and executor under claims of ownership through Clark Pease, deceased, and held for beneficiaries, in their representative capacities as trustee and executor, and as devisees. Their liability is each limited to the values of the estates held, proportioned to the extent of title and interest of respective beneficial ownership. Section 66, tit. 12 USCA. Authority to sue is also given by the Texas Revised Statutes 1925, art. 3464, providing that any creditor may sue any or all distributees who have received any of the estate, limited to that proportion received in distribution by a beneficiary.

The plaintiff is hereinafter designated receiver. The defendants are the Republic National Bank & Trust Company of Dallas, Tex., trustee of the estate of Clark Pease, deceased, hereinafter referred to as trustee; Myron A. Pease, independent executor of the estate of Clark Pease, deceased, mentioned hereinafter as executor; the Corpus Christi independent school district and C. P. Yeager et al., trustees of said school district, are referred to as school district; the Sapt. A. G. Fur Textilprodukte, a corporation, and the Baltic Cotton Company, a corporation, are hereinafter designated as interveners. Mrs. Emma Pease, a feme sole, mother of Clark Pease, deceased, claiming a trust fund as part of his estate, is a defendant. Briefs, supplementing oral argument, have been submitted by (1) receiver, and by (2) trustee, as stated, and by (3) school district, and by (4) Mrs. Emma Pease, mother of testator, Clark Pease, and by (5) Marie Pease Crook, testator's daughter, Frank Crook, her husband, guardian of the estate of Catherine Crook, their daughter, a minor, testator's granddaughter. Executor, Myron Pease, testator's son, a devisee, having transferred the estate to trustee, as required by the will, and Mrs. Lyda Pease, testator's wife, a devisee, are not formally represented by attorneys of record. Presumably these devisees have representation here through powers conferred on trustee by the terms of testator's will, and because of Myron Pease's status as executor.

Clark Pease, at the time of his death, November 29, 1929, had control of said City National Bank & Trust Company, hereinafter referred to as the bank, through ownership of a great majority of its shares, being president and active manager, assisted by his son, Myron, prior to and at the time of his death. During this period the bank was solvent and the major asset of the estate. The remaining asset consists of practically all of the shares of the capital stock of the Port Compress Company of Corpus Christi, Tex.

The bank and compress shares represent practically all of the property of the Clark Pease estate subject to judgment and execution. The bank shares held by trustee approximate half of the estate, and is devised to Myron A. Pease. The compress shares held by trustee represent the remaining approximate half of the estate, and is devised to Marie Pease Crook, testator's daughter, and her daughter, Catherine Crook, a minor, devised under the will, the latter represented herein by Frank Crook, her father, guardian of her estate.

The will of Clark Pease was executed in 1927. The testator died November 29, 1929. The will was probated January 4, 1930. The executor qualified in February, 1930, and delivered the estate to trustee in April, 1930, without having paid its debts. Debts or claims then existing or asserted were: (1) The claim of Mrs. Emma Pease, the testator's mother, of about $10,844.25, asserted to be a trust fund in the hands of Clark Pease at the time of his death. (2) Two suits still pending in the district court of Nueces county, Texas, against Clark Pease, by the interveners, known as the "Cotton Suits," representing a contingent liability of about $25,000. Trustee administered the es-

tate from April, 1930, to November, 1931, when the bank closed. Since then the trustee has paid to Mrs. Emma Pease approximately $700 per year, besides the necessary running expenses. The income was paid to Mrs. Lyda Pease as provided in the will. Legacies were also paid to the two charitable institutions named of $5,000 each. These payments are not contested. The estate was solvent until the bank closed November 3, 1931. (3) Receiver was appointed, and on January 14, 1932, an assessment of 100 per cent. was made by the Comptroller against all shareholders, thus fixing liability against bank shares held by trustee. (4) A contingent liability was incurred in 1929 by Clark Pease and trustee, in signing, as sureties, the depository bond of the bank to the school district for $105,408.39, for which suit was brought by school district in the district court of Nueces county, Tex. After trial and judgment, the case was appealed to the Court of Civil Appeals of Texas, which court reversed, January 31, 1934, the judgment of the trial court, and rendered judgment in favor of plaintiff, school district, against defendants, the bank, the receiver, estate of Clark Pease, trustee, and others, sureties on the depository bond, Myron Pease, executor, and individually, for the principal sum named, together with 6 per cent. interest from March 21, 1933. Johns v. City Nat. Bank & Trust Co., 68 S.W.(2d) 595. The Supreme Court of Texas denied application for writ of error, and July 16, 1934, mandate issued to the appellate and district courts for observance. The judgment has been reduced to approximately $42,000, and interest, through dividends received by school district from the bank liquidation.

■ Following the mandate, receiver filed this suit for equitable relief, praying that school district be enjoined from enforcing its judgment against Clark Pease, surety, upon the ground that his estate was insolvent and that its creditors were entitled to a rateable distribution thereof. Otherwise, school district, through levy of execution, would secure a preference over other creditors, contrary to equity. Levy was accordingly stayed, awaiting final decision. The time when the estate became insolvent is important, since the awards to creditors, in that event, must be made rateably. See article 3464, R. S. Texas 1925; Farmers' & Merchants' Bank v. Bell, 31 Tex. Civ. App. 124, 71 S. W. 570; Woods v. Bradford (Tex. Civ. App.) 284 S. W. 673; McFarland v. Shaw (Tex. Com. App.) 45 S.W.(2d) 193.

The evidence shows that the estate was solvent at the time trustee received the estate from executor, April, 1930, and so remained until the bank was officially closed by the Comptroller, and taken over through its receiver about November 3, 1931. It was during and after this period that the value of the shares of the compress stock were shown to be $25 per share. The assessment, January, 1932, of 100 per cent. on the bank shares by the Comptroller, created a charge against shareholders of about $100,000; the major portion of which, the evidence does not disclose an exact amount, is thus fixed as a liability of the estate. The paralysis of business and of values during the period of economic depression, 1930 to 1934, throughout the nation, brought about the bank's insolvency, and rendered the shares of stock held by the estate practically valueless, creating in them a liability through the 100 per cent. assessment. The compress stock during this period and later is shown to be one-half of its par value of $50, or $25, per share, the estate holding then about 1,700 shares, which is $42,500 value for the compress stock, with liabilities negligible.

Interveners sue in state courts for $25,000. The estate is reduced by a payment of $10,000 to charitable institutions. The devise of $10,844.25 to Mrs. Emma Pease is an acknowledgment of moneys had and received, which, with the $700 annual charge during her lifetime, are fixed as liabilities.

The value of the services of trustee to the estate is not determined. The court finds that the estate was solvent in April, 1930, became insolvent during a period between that time and November 3, 1931, the date fixed as the time when the receiver went into possession. In the absence of definite accounting data to precisely fix the exact date of insolvency, the court finds November 3, 1931, to be that date.

The estate being insolvent, burdened far in excess of its value by proven claims of creditors, how, in law and good conscience, may their rights and those of beneficiaries under the will be determined?

■ Payments of estate funds by executor or trustee, during solvency, and made according to the provisions of the will, are legitimate, and all such made prior to November 3, 1931, the date of insolvency, should be allowed. This includes the two bequests of $5,000, one to the general board of finance for the Endowment Fund for Superannuated Ministers of the Southern

Methodist Church, and the other to the Methodist Orphanage at Waco, Tex.; also includes annual sums of approximately $700 paid by trustee to Mrs. Emma Pease, during interim from April, 1930, to November 3, 1931, the date of the bank's closing; also includes the net income of the estate for the same period, paid to Mrs. Lyda Pease; likewise the actual necessary operating expenses of the business of the trust. These items are not contested, as previously mentioned, and are to be confirmed by formal order.

Interveners, who filed suits in the state court for $25,000, have status as undetermined claims against the estate. The rights of interveners are not pressed. No further statements of fact or law concerning these claims can be made at this time.

■ The claim of Mrs. Emma Pease is evidenced by the joint letter of her two sons, Clark Pease, decedent, and Earl M. Pease, together with her letter accepting its terms. These create the obligation of Clark Pease to pay her the principal sums theretofore received and $700 per year. Claimant contends that the mutual obligation bound Clark Pease to provide for Mrs. Emma Pease during her lifetime, and constituted a dedication and separation from his estate of the moneys acknowledged by him as received from her, thus creating a trust relation, the effect of which was and is to set apart from the assets of his estate sufficient in value to secure to Mrs. Emma Pease the performance of his obligation. The court finds and concludes that the letters constitute the lawful obligation of Clerk Pease to account to his mother for advances in cash made to him of $10,844.25; also his obligation to pay her annually during her lifetime $700, thus creating a trust relation between them; but does not bind any particular asset or parcel thereof by identification as being actually separated from the body of his estate, and thus charged as trust property.

■ "One seeking to charge a fund in the hands of a trustee for the benefit of all creditors as being the proceeds of his property and therefore a special trust fund for him, has the burden of proof; and if he is unable to identify the fund as representing the proceeds of his property, his claim must fail as all doubt must be resolved in favor of the trustee who represents all creditors." Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806.

■ "While the right to follow misapplied moneys as trust funds into the hands of a receiver has been extended * * * there has never been in the federal courts a departure from the principle that there must be some identification of the property followed with the trust funds." American Can Co. v. Williams (C. C. A.) 178 F. 420, 423.

This case is approved in St. Louis & S. F. R. R. v. Spiller, 274 U. S. 310, 47 S. Ct. 635, 71 L. Ed. 1060. Also in Pottorff v. Key (C. C. A.) 67 F.(2d) 833. Where proceeds are sought to be traced that had been commingled, in order to identify them as trust funds, the Circuit Court of Appeals for the Fifth Circuit, in Armour Fertilizer Works v. Jule Smith, 68 F.(2d) 794, on the necessity of identifying trust funds, declares: "Appellant * * * has signally failed to trace into the safety deposit box any money or proceeds which the bankrupt had collected upon the trust receipts. For aught that appears to the contrary, all the money collected in trust for appellant may have been placed by the bankrupt in the safe at his place of business, or deposited by him in bank, and paid out for merchandise, for clerk hire and cost of operations, or in satisfaction of his other debts. This being so, it follows as a necessary conclusion that appellant has failed to trace any trust funds to which it is entitled into the hands of the trustee in bankruptcy." St. Louis & S. F. R. R. v. Spiller, 274 U. S. 310, 47 S. Ct. 635, 71 L. Ed. 1060.

■ Mrs. Pease having failed to identify any particular property of the estate as being charged with liability under the trust agreement with Clark Pease, her claim will be allowed, and classed as that of an unsecured general creditor for $10,844.25 principal, with interest from November 3, 1931, at the rate of $700 per annum, less sums of money, if any, paid by trustee, the exact amount to be specified in the court's order.

■ Having received through the bank's liquidation some $63,000, school district sought to levy, October, 1934, on the assets of the estate, but was restrained on receiver's application, pending this submission, upon the ground that, the estate being insolvent, general creditors were entitled to a pro rata distribution of its avails. During insolvency, February 23, 1932, the Comptroller assessed the bank's shares 100 per cent. School district's claim against the bank is as a depositor. A general judgment was rendered in its favor against the bank, the decedent, Clark Pease, and sureties on the depository bond, including his executors, trustees, heirs, and assigns. The contingent

liability of Clark Pease under the depository bond protecting school district shifted to liability certain November 3, 1931; the day marking the bank's insolvency as well as that of the estate, and so continuing at the time levy of execution was sought down to the present. The receiver was then in possession of the bank's assets, and actively liquidating same under the federal laws. Having first acquired jurisdiction of the subject-matter and of the res, this court will, according to the rule of comity, continue in exercise thereof. Beach on Receivers, § 20, p. 21; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Andrews v. Smith (C. C.) 5 F. 833, 19 Blatchf. 100. The school district's asserted right to levy execution on property of the bank in the possession of receiver, to satisfy its final judgment of the state court, should be denied. Its claim of priority over general creditors because of trust fund security fails, as does that of Mrs. Emma A. Pease, since no specific property was set apart and dedicated to the liquidation of the obligation. These claims should be classed as those of unsecured general creditors.

The bequests and devises are, to Mrs. Lyda A. Pease, testator's widow, the incomes from his estate for life, with the remainder thereof, one-half to Myron A. Pease, son, and one-half to Marie Pease Crook, daughter, and Catherine Crook. The trustee administering the estate seeks confirmation of its interpretation of the terms of the will. The words "bequests" and "devises," as used here, are intended to include both real and personal property. Since Mrs. Lyda Pease during her lifetime is to receive the income of the estate, with remainder to testator's son and daughter, one-half to each, the question arises as to when the estate vests in the named devisees; whether at the death of the testator or that of his wife.

The answer is found in Warner v. Commissioner of Internal Revenue, 72 F.(2d) 225, Circuit Court of Appeals, Second Circuit, Augustus N. Hand, Justice. There the testator bequeathed his residuary estate, in trust, for five years—with incomes to two sons—and the residue of his estate in fee, to them, on termination of the trust period. The amount of the tax imposed by the government depended on the property value at the time title vested in the sons. The case decides that the title vested at the date of the death of the testator—citing many cases, among others Brewster v. Gage, 280 U. S. 327–334, 50 S. Ct. 115, 74 L. Ed. 457. Mr. Justice Butler holds that the sons' share of the residue vested immediately on the testator's death. Applying the law to the facts here, the court concludes as a matter of law that the title to the estate vested in testator's son, Myron, and daughter, Marie, at his death, November 29, 1929, notwithstanding testator's grant of incomes thereof to his wife, Lyda, during her lifetime.

The trustee suggests that a decree awarding plaintiff 100 per cent. assessment against the bank shares bequeathed to Myron A. Pease, a part of the trust estate, is payable only from Myron A. Pease's portion of the estate, citing two cases directly on the point, the controlling facts being practically the same as here. The cases are styled Jones v. Cronkleton, and Cronkleton v. Jones, 67 F.(2d) pages 17 and 21, respectively, Eighth Circuit opinions, by Judge Van Valkenburgh. Effect is given to section 66, 12 USCA, supra. The headnotes of each case state the facts substantially the same and the law applicable here:

First case, page 17 of 67 F.(2d): (1) "Trustees of testamentary trust, holding stock of insolvent national bank thereunder, must respond to assessment for statutory stockholders' liability to extent of all trust property held by trustees for same beneficiaries for whom stock is held."

(2) "Where testator bequeathed subsequently insolvent national bank's stock in trust for life beneficiary, with contingent remainders, trustees *held* subject to stockholder's statutory liability to extent of property held under such clause and property held under residuary testamentary trust clause for same beneficiaries and upon same terms."

Second case, page 21 of 67 F.(2d): (3) "Where testator bequeathed stock in subsequently insolvent national bank in trust for daughter for life, trustees *held* subject to stockholders' statutory liability only as to assets held under such trust, not as to assets held in separate trusts under same will for other beneficiaries, from which separate trusts daughter might eventually benefit as possible heir of testator's son dying after testator."

These cases originate in the United States District Court for the District of Nebraska, and their judgments were affirmed. 4 F.Supp. 690. The decisions of both the trial and appellate court construe the terms of the will, and declare exactly the measure of responsibility of the federal law as to assessments of owners of shares in

national banks. Liability is not incurred by reason of any rule governing the testamentary disposition of property in the state of Nebraska, but is declaratory of the law generally.

The Supreme Court of the state of Texas so holds in Caples v. Ward, 107 Tex. 341, 179 S. W. 856, and applies the rule in that state.

The testator's residuary estate was devised to his wife for life, with remainder over to five named children, living at the time of testator's death, and the wife then living. A judgment was rendered against a son, and execution was levied on his estate in remainder. The court holds that, where there is a grant of an estate to "A for life, and after his death, to B, in fee, the remainder is vested and subject to execution and sale." See, also, Flores v. De Garza (Tex. Com. App.) 44 S.W.(2d) 909.

 The federal and state interpretation of the effect of the pertinent clauses is that the bequests to Myron A. Pease of the bank stock and to Marie Crook and her daughter of the compress stock are vested estates, and subject to execution under judgments which enforce obligations burdening the respective estates. The shares of stock in the bank, held by Myron A. Pease, being subject to the 100 per cent. assessment, the plaintiff receiver will look to him for the amount of assessment due as shareholder. Receiver should have judgment against Myron A. Pease and trustee as being holders of shares prior to the insolvency of the estate.

 The estate being insolvent, the rights of devisees under the will are subordinate to that of creditors. Its assets will be marshaled, liquidated, and applied to the costs of court expense of administration, and a rateable liquidation of claims as directed by the court, through its officer to be styled court trustee. In the absence of objections, the Republic National Bank & Trust Company of Dallas, Tex., will be designated as such trustee, by order appointing, requiring bond, and stating duties. Reasonable compensation for services rendered to be fixed in order appointing, or by subsequent order.

Attorneys for respective parties will on the 15th day of January, A. D. 1935, at 10 a. m., at Houston, Tex., submit form of order carrying into effect the terms of the foregoing, as the final judgment and decree, to include reservations of parties, if any, of exceptions thereof.